Filed 8/5/16  P. v. Wong CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANG HING WONG, JR.<br><br>    Defendant and Appellant. | D069907, D069908<br><br><br>(Super. Ct. Nos.<br> INF1402078, BLF003630) |

APPEALS from a judgment of the Superior Court of Riverside County, Graham Anderson Cribbs, Judge.  Affirmed.

William Gerhard Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Arlene A. Sevidal, Michael P. Pulos and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Sang Hing Wong of corporal injury to a cohabitant, Jane Doe (Pen. Code,[1] § 273.5, subd. (a); count 1); false imprisonment (§ 236; count 2), and destroying a cell phone (§ 591.5; count 3) in case No. INF1402078. The trial court found true allegations that Wong had suffered a prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)) and two or more prior felonies (§ 1203, subd. (e)(4)).[2] It found Wong in violation of probation in case No. BLF003630 under section 1203.2, subdivision (b). The court sentenced him to three years four months in prison in case No. INF1402078, consisting of a two-year term on count 1 and a one-year four-month term on count 2 (both one-third the midterm, doubled). It sentenced him to 180 days on the count 3 misdemeanor. The court imposed a previously suspended sentence of 13 years eight months in case No. BLF003630 to run consecutively to case No. INF1402078.

In these consolidated appeals, Wong contends the court prejudicially erred by admitting Doe's preliminary hearing testimony and a law enforcement officer's on-scene "interview" of Doe at trial in case No. INF1402078 because Doe's statements were testimonial and thus their admission violated his right to confront witnesses against him under the Sixth Amendment, as well as his federal due process rights in his probation revocation hearing in case No. BLF003630, which was held concurrently with the trial. He additionally contends his counsel was constitutionally ineffective for failing to raise a confrontation clause objection. Wong further contends the court erred by admitting

_____

[1]    Statutory references are to the Penal Code unless otherwise indicated.
[2]    The court also found true that Wong had committed a felony while released on bail (§ 12022.1, subd. (a)(2)), but it struck that enhancement at Wong's sentencing hearing.

2

evidence of his prior instances of domestic violence under Evidence Code section 1109 and his counsel was constitutionally ineffective to the extent his objections did not preserve the challenge. Wong maintains these cumulative errors rendered his trial fundamentally unfair, requiring reversal of his convictions. Finally, Wong contends his consecutive sentences on counts 2 and 3 in case No. INF1402078 should be stayed under section 654. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2014, then eight-month pregnant Doe approached a gardener working in a neighboring patio. The gardener observed that Doe was scared and crying, and her phone was broken. Doe told the gardener that her husband had been beating her, and asked the gardener to let her use his phone to call police. She called 911 to report that about 20 minutes earlier, Wong had hit her and broken her phone because she was keeping his car keys from him, he did not let her leave the house, and she had bruise marks on her body. She told the dispatcher that Wong was under the influence of alcohol and drugs, and she was next door hiding from him.

Eventually, Wong approached the gardener and asked if he had seen Doe. The gardener informed Doe that Wong was looking for her and let her use his phone again to call 911. Doe reported to the 911 dispatcher that Wong, her fiancée, was looking for her, she was hiding at a neighbor's house, and she was going to walk farther away. The dispatcher informed Doe that she had let deputies know "he's still there, and he was looking for you," and they would be right there.

3

Riverside County Sheriff's Deputy Dustin Lloyd responded to the call and contacted Doe about 30 minutes after Doe called 911, at an intersection about 150 to 200 yards away from her home. Doe, who appeared worried, told Deputy Lloyd that Wong had blocked her in a hallway in their home and said she wasn't going to go anywhere, then pulled her and repeated his statement. She told the deputy that Wong grabbed her phone and destroyed it when she said she was going to call police.[3] The deputy saw that Doe did not have anything with her but her broken phone and a debit card; the screen of Doe's phone was shattered and the phone lacked its back and battery. Doe told the deputy that Wong was preventing her from leaving their house and had pinned her against the wall using both of his hands. Deputy Lloyd observed bruising on Doe's right breast area and arm. She explained the chest bruise occurred when Wong took her phone, which she was holding up to her chest, and the others were from Wong pinning her against the wall. When Deputy Lloyd asked Doe if she wanted to press charges, she said, "Yes, he hurt me."

The People admitted audio recordings of Doe's 911 calls into evidence. Doe refused to testify at trial, and after repeatedly finding her in contempt, the court found her

[3] At this point in Deputy Lloyd's testimony, Wong's counsel began interposing confrontation clause objections, stating that Doe's answers were not within the preliminary hearing transcript. The court offered to give counsel a standing objection on the matter, which she declined. The court overruled Wong's confrontation clause objections. At a break, counsel moved for a mistrial on grounds Deputy Lloyd's testimony violated Wong's Sixth Amendment right to confront witnesses. The prosecutor responded the deputy "has offered the evidence of [Doe's] prior statements pursuant to the rules of evidence that allow for impeachment, and has limited impeachment to statements that were given by Ms. Doe during the preliminary hearing examination." The court denied Wong's motion.

to be unavailable as a witness within the meaning of Evidence Code section 240. The parties thereafter stipulated that due to Doe's unavailability and continued refusal to testify despite the People's grant to her of use immunity, her August 6, 2014 preliminary hearing testimony would be read into evidence. At that hearing, Doe had testified she called police on the day in question to come talk to Wong because Wong had been drinking and would not take her to an anger management class they both were required to attend; she wanted to leave the house to get some air but he closed the door and pushed her inside to talk to her about their daughter. Doe characterized Wong as "stressed out." Doe testified that she did not use her own phone to call police because Wong dropped it. She denied he threw it intentionally. When asked about her statements to Deputy Lloyd, Doe testified that Wong was just trying to apologize to her for not taking her to her class, that he did not push her against the wall but merely "swayed" her to the side and tried to apologize. She denied that Wong had bruised her as a result of pushing her against the wall. Thereafter, Doe invoked her Fifth Amendment privilege against compelled self-incrimination and refused to answer the rest of the prosecutor's or defense counsel's questions.

The People presented Wong's ex-wife, Nallely Diaz, who was 26 years old at the time of trial. She testified that a year after their relationship started in 2003, and while they were dating, Wong started engaging in physical abuse. He had slapped her in the face on one occasion, and on another occasion hit her head against bathroom tile, causing her to start to black out. Diaz testified that on another occasion, when she was "maybe 15 or 16" years old, she hit him during an argument and he struck her and "busted" her

5

eyebrow open, requiring her to go to the emergency room for stitches. Diaz could not remember the year the eyebrow incident occurred. On another occasion in 2011, Wong grabbed her arm and pinned her to the ground trying to wrestle her phone away. During another argument he dragged her by the hair into another room. Diaz finally got a restraining order against Wong after the last incident. She testified she spoke to police about the 2011 incident but did not report any of the others because she loved Wong, had a child with him, and did not want to get him in trouble.

## DISCUSSION

### I. *Right to Confrontation*

Wong contends that admission of Doe's preliminary hearing testimony and Deputy Lloyd's testimony concerning Doe's on-scene statements violated his Sixth Amendment right to confront witnesses against him. Wong asserts the statements were testimonial, and Doe was not available for cross-examination at either the trial or the preliminary hearing. According to Wong, admission of this testimony was prejudicial because it provided the only detailed account of the event, the prosecution heavily relied on Deputy Lloyd's interview to prove the charges, and though Doe's preliminary hearing testimony was more benign, it was also damaging in conjunction with her police interview.

### A. *Legal Principles*

This court has outlined the relevant principles in several cases. (See *People v. Gann* (2011) 193 Cal.App.4th 994; *People v. Nelson* (2010) 190 Cal.App.4th 1453.) "In *Crawford v. Washington* (2004) 541 U.S. 36 . . . (*Crawford*), the United States Supreme Court held that the confrontation clause of the Sixth Amendment to the United States

6

Constitution prohibits the admission of out-of-court '[t]estimonal statements of witnesses absent from the trial [unless] the declarant is unavailable,' and 'only where the defendant has had a prior opportunity to cross-examine.' [Citation.] The *Crawford* court did not set forth 'a comprehensive definition' of what constitutes 'testimonial evidence,' but held that '[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.' [Citation.] With respect to nontestimonial hearsay, *Crawford* held that where the proffered statement is not testimonial, state law may regulate the admission of evidence by applying statutory hearsay rules, without running afoul of the confrontation clause.

"In *Davis v. Washington* (2006) 547 U.S. 813 . . . (*Davis*), the United States Supreme Court explained the distinction between nontestimonial and testimonial statements made to law enforcement officers during a 911 call or at a crime scene: 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.' [Citation.] Statements are testimonial 'when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.' [Citation.]

". . . [O]ur Supreme Court [has] identified several 'basic principles' to assist courts in determining whether a particular statement is or is not testimonial. . . . [A]lthough a testimonial statement need not be made under oath, it must have some 'formality and solemnity characteristic of testimony' and 'must have been given and taken primarily . . .

7

to establish or prove some past fact for possible use in a criminal trial.' [Citation.] However, 'statements elicited by law enforcement officials are not testimonial if the primary purpose in giving and receiving them is to deal with a contemporaneous emergency, rather than to produce evidence about past events for possible use at a criminal trial.' [Citation.] '[T]he primary purpose for which a statement was given and taken is to be determined "objectively," considering all the circumstances that might reasonably bear on the intent of the participants in the conversation.' " (*People v. Gann*, *supra*, 193 Cal.App.4th at pp. 1007-1008, quoting *People v. Cage* (2007) 40 Cal.4th 965, 984.)

Following *Davis*, *supra*, 547 U.S. 813, the high court reaffirmed that "not all those questioned by the police are witnesses and not all 'interrogations by law enforcement officers,' [citation], are subject to the Confrontation Clause." (*Michigan v. Bryant* (2011) 562 U.S. 344, 355; see *People v. Leon* (2016) 243 Cal.App.4th 1003, 1019.) More recently, it explained in *Ohio v. Clark* (2015) ___ U.S. ___ [135 S.Ct. 2173, 2179-2180] that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." (See *People v. Rangel* (2016) 62 Cal.4th 1192, 1214.) "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial

8

testimony.' " (*Ohio v. Clark*, at p. 2180; *Rangel*, at pp. 1214-1215.)[4]  Hearsay evidence must now satisfy this "primary purpose" test in order to be considered testimonial for purposes of the Sixth Amendment confrontation right.  (*Leon*, at p. 1019.)

In *Davis*, a woman called 911 and reported that her former boyfriend was " 'here jumpin' on me again' " and " 'usin' his fists.' "  (*Davis*, *supra*, 547 U.S. at p. 817.)  After answering a few more questions, the victim told the operator that her boyfriend had run out the door after hitting her and left in a car, after which the operator continued to question the victim about the identity of the boyfriend and the circumstances of the attack.  (*Id*. at p. 818.)  The police arrived within four minutes of the 911 call and observed the victim in a "shaken" state with fresh injuries on her forearm and face, making frantic efforts to gather her belongings and children so they could leave the residence.  (*Ibid*.)  In *Hammon v. Indiana*, a case consolidated with *Davis*, police responded to a domestic violence call and found the victim alone on the front porch of her home.  (*Id*. at p. 819.)  She appeared " 'somewhat frightened' " but claimed nothing was wrong.  (*Ibid*.)  On entering the house, police saw a heating unit with broken glass and found the victim's husband in the kitchen, who told police that he and the victim had been in an argument but everything was " ' "fine now." ' "  (*Ibid*.)  Police kept the couple in separate rooms and questioned the victim, who eventually signed an affidavit stating in

---

4       Because Wong's prosecution took place after *Crawford*, *supra*, 541 U.S. 36 was decided, we are not presented with the circumstances present in *People v. Rangel*, *supra*, 62 Cal.4th at p. 1192, where the trial took place in 1998.  (*Id*. at p. 1215.)  The California Supreme Court held in *Rangel* that in cases tried before *Crawford*, a defendant does not forfeit a *Crawford* challenge by failing to raise a confrontation clause objection at trial. (*Rangel*, at pp. 1215-1216.)

part that her husband had hit her and shoved her into the broken glass of the heating unit. (*Id*. at pp. 819-820.)

The court in *Davis* held that the victim's statements in the 911 call were nontestimonial, but that the victim's statements to police officers in *Hammon v. Indiana* were testimonial: "It is entirely clear from the circumstances that the interrogation [of the victim in *Hammon*] was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged . . . . There was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything . . . . When the officers first arrived, [the victim] told them that things were fine . . . and there was no immediate threat to her person. When the officer questioned [the victim] for the second time, and elicited the challenged statements, he was not seeking to determine (as in *Davis*) 'what is happening,' but rather 'what happened.' Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer *should* have done." (*Davis*, *supra*, 547 U.S. at pp. 829-830.) The court held as to the statements made in *Hammon*, enough formality was present in the questioning by the fact the questions occurred in a separate room from the defendant, and the statements "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed" and "took place some time after the events described were over. Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." (*Davis*, at p. 830.) *Davis* "strongly suggests that when the victim

10

is questioned by the police and the assailant has departed or is detained by the police, the emergency, for purposes of the confrontation clause, is over." (*People v. Johnson* (2010) 189 Cal.App.4th 1216, 1226.)

B. *Wong Forfeited Any Confrontation Clause Claim as to Admission of Doe's Preliminary Hearing Testimony and His Counsel Was Not Constitutionally Ineffective for Stipulating to Its Admission*

Because Wong's counsel did not object on Sixth Amendment grounds, but in fact stipulated to admit Doe's preliminary hearing testimony, he has forfeited his claim that its admission violated his right to confrontation. (*People v. Redd* (2010) 48 Cal.4th 691, 729; *People v. Dykes* (2009) 46 Cal.4th 731, 756; *People v. Alvarez* (1996) 14 Cal.4th 155, 186.) "[N]umerous decisions by this court have established the general rule that trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal." (*Dykes*, at p. 756.) The rule of forfeiture applies with equal force to claims that admission of evidence violated the confrontation clause. (See *Redd*, at p. 730 ["Defendant also contends that the admission of out-of-court identifications violates a defendant's right under the Sixth Amendment to confront witnesses, even when the declarant testifies. He did not raise an objection below based upon the confrontation clause, and therefore has forfeited this claim"].)

As for Wong's claim of ineffective assistance of counsel, we generally do not reach such claims on appeal, but may do so if the record affirmatively discloses counsel had no rational tactical purpose or there is no satisfactory explanation for the omission. (*People v. Mai* (2013) 57 Cal.4th 986, 1109; see *People v. Cowan* (2010) 50 Cal.4th 401,

11

493, fn. 31.)  In this case, we are unable to conclude Wong's counsel had " ' "no conceivable tactical purpose" ' " for failing to object.  (*Cowan*, at p. 493, fn. 31.)  Wong's counsel was not prejudicially ineffective in this respect, as it is plain she had a rational tactical purpose for admitting Doe's preliminary hearing testimony, which contradicted in material respects Doe's 911 calls and statements to Deputy Lloyd and supported Wong's defense that she had falsified her account.  Indeed, during closing arguments, Wong's counsel pointed to Doe's invocation of the Fifth Amendment as an indication that she did not want to perjure herself for having made a false police report.  The record on appeal does not establish the absence of any rational tactical purpose for counsel's omission, and consequently Wong cannot establish ineffective assistance of counsel with regard to Doe's preliminary hearing testimony.

Even if we were to conclude otherwise, Wong cannot establish any prejudice from his counsel's assumed failings.  To do so, he must show that it is reasonably probable, but for those failings, the result would have been different: more favorable to him.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-696; *In re Welch* (2015) 61 Cal.4th 489, 517.)  He "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel."  (*People v. Williams* (1988) 44 Cal.3d 883, 937.)  Here, Wong makes no claim that Doe's 911 calls and the gardener's testimony were improperly admitted into evidence.  The jury could reasonably conclude from that evidence alone that Wong was her fiancée, he hit Doe in a manner sufficient to cause bruising, he kept her inside their house against her will, and he broke her phone by slamming it against the ground.  Though Wong argues

12

that Doe's statements to the 911 dispatchers and the gardener were "brief and conclusory," and that her statement about Wong being under the influence was false, he does not explain how that evidence is insufficient to support his convictions for corporal injury to a cohabitant, false imprisonment, and destruction of a cell phone. Nor are we persuaded by the fact that the prosecutor assertedly did not rely on that evidence in her closing argument. The question is whether the jury would have reached a different conclusion absent any ineffective assistance in light of the remaining evidence presented to it. Finally, Doe's preliminary hearing testimony downplayed the incident, and favored Wong in many respects. Under the circumstances, we cannot conclude that without counsel's stipulation to admit Doe's preliminary hearing testimony, Wong would have achieved a better outcome at trial.[5]

---

[5] Following the completion of briefing in this matter, Wong brought to our attention *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, which he states is relevant to his claim that Doe was unavailable for cross-examination at the preliminary hearing or trial. *Giron-Chamul* involved a child witness, the defendant's then five-year two-month-old daughter, who testified at trial after which the defendant was convicted of orally copulating her. (*Id*. at p. 936.) During cross-examination, the child refused to answer "hundreds" of questions on important topics, including her drawings and report to a day care provider, her forensic interview, other possible explanations for her apparent sexual knowledge, and follow-up questions on some of her specific claims about what the defendant had done to her. (*Id*. at pp. 966, 968.) The Court of Appeal agreed with the defendant's claim that he was denied his right to confrontation because he did not have a full and fair opportunity to cross-examine the child. (*Id*. at pp. 941, 961.) That conclusion depended in part on the inferences to be drawn from her refusal to answer questions, which the appellate court observed was different for a child witness: "An adult witness's difficult and defiant conduct, such as refusing to answer questions, gives rise to an inference that the testimony the witness *does* give is not believable. [Citations.] A similar inference does not arise when a child witness has difficult answering questions. Indeed, a child's reluctance to answer questions, especially about sensitive subjects such as molestation, may *enhance* the child's credibility to the extent it suggests that whatever

13

C. *Deputy Lloyd's Testimony*

Wong contends Doe's statements elicited from Deputy Lloyd's interview were testimonial within the meaning of *Crawford*, *supra*, 41 U.S. 36, and thus improperly admitted into evidence in violation of his Sixth Amendment rights, because the deputy's interview of Doe did not occur during an ongoing emergency or was motivated by any need to locate Wong, but rather constituted questions to Doe about a past event for the purpose of conducting a criminal investigation. The People respond that Doe's statements to Deputy Lloyd were not testimonial; that Doe was outside her home to avoid further physical abuse, and the primary purpose of the deputy's conversation with Doe was to deal with a contemporaneous emergency, namely to understand Doe's circumstances and take action to with respect to that situation. The People argue Doe's interrogation was to enable police assistance to meet the ongoing emergency, which had not ended because Doe had reported that Wong was outside looking for her and "[h]ad the officer simply walked away, Doe would be in the same position she was in before she

happened is too traumatic for the child to discuss. Here, daughter's refusal to answer numerous questions did not in and of itself suggest a lack of credibility as it might for an adult." (*Id*. at p. 967.) Reviewing cases, the court held that given the number of questions left unanswered and their critical importance, the defendant was deprived of his right to " ' " a full and fair opportunity to probe and expose . . . infirmities" ' in her testimony and out-of-court statements" and the testimony should have been stricken. (*Id*. at p. 969.) It further held that the violation was prejudicial as the child was the complaining witness, her claims were not corroborated by evidence from any independent source, and the prosecution's case was "far from overwhelming" as evidenced by a jury deadlock and the defendant's acquittal on two other counts. (*Id*. at p. 969.) *Giron-Chamul* has little bearing to the present case, which involves an adult witness and the presence of other corroborating evidence of Wong's offenses. We need not discuss it further as we have concluded Wong forfeited his confrontation clause objection to the admission of Doe's preliminary hearing testimony.

14

called 911—in danger of being found by [Wong]—and the emergency would not have been dealt with."

In *Michigan v. Bryant*, *supra*, 562 U.S. 344, the U.S. Supreme Court explained: "The existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.' [Citation.] Rather, it focuses them on 'end[ing] a threatening situation.' " (*Id.* at p. 361.) "The existence of an ongoing emergency must be objectively assessed from the perspective of the parties to the interrogation at the time, not with the benefit of hindsight. If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." (*Id.* at p. 361, fn. 8.) Based on *Bryant*, the California Supreme Court has identified six factors to consider in determining whether statements made in the course of police questioning are for the primary purpose of creating an out-of-court substitute for trial testimony implicating the confrontation clause: "(1) [A]n objective evaluation of the circumstances of the encounter and the statements and actions of the individuals involved in the encounter; (2) whether the statements were made during an ongoing emergency or under circumstances that reasonably appeared to present an emergency, or were obtained for purposes other than for use by the prosecution at trial; (3) whether any actual or perceived emergency presented an ongoing threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the interrogation had shifted from addressing an

15

ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances under which it was obtained." (*People v. Chism* (2014) 58 Cal.4th 1266, 1289.)

Although the question is close, applying these principles here compels us to conclude, viewing the circumstances objectively, that Deputy Lloyd's encounter with Doe did not produce testimonial hearsay, and admission of her statements to him into evidence did not violate Wong's Sixth Amendment right to confront witnesses. Deputy Lloyd arrived at the scene to find Doe alone, worried, and hiding from Wong having nothing in her possession but her broken phone and a debit card. He had been informed by the 911 dispatcher that Wong was "still there" and actively looking for her. Though Deputy Lloyd testified he did not see Doe was overtly bleeding or hysterical or that Wong was chasing or threatening her, he did see Doe's bruises, and from his perspective, she was presently avoiding perceived danger from Wong. It is reasonable to conclude that under these circumstances, Deputy Lloyd's questioning, at least initially, was for the purpose of protecting Doe from Wong who was still following her and to determine what *was* happening, not merely what had happened earlier. The fact that Deputy Lloyd later contacted Wong at his and Doe's house does not change our conclusion, as there is no evidence that when he contacted Doe, the deputy was aware that Wong had returned to the house. Rather, the deputy could reasonably conclude Wong was at large presenting a danger to Doe, and possibly others, in view of the absence of evidence that Deputy Lloyd knew Wong's motives. As to the question of an ongoing emergency, the high court has explained it is " 'highly context-dependent' " and "[e]ven if hindsight reveals that an

16

emergency did not, in fact, exist, if it reasonably appeared to exist based on the information known when the statement was made the emergency test is satisfied." (*People v. Blacksher* (2011) 52 Cal.4th 769, 814.) Further, "[e]ven when a threat to an initial victim is over, a threat to first responders and the public may still exist." (*Ibid.*) The record permits us to conclude that Deputy Lloyd reasonably perceived such emergency circumstances here, and that in questioning Doe on the street, he was not primarily acting as an investigator gathering evidence for trial.

II. *Claim of Due Process Violation in Probation Revocation Hearing*

In case No. BLF003630, Wong was placed on probation with a condition that he "[o]bey all laws, ordinances, and court orders." After the jury returned its verdicts in the present case, the court addressed the People's petition to revoke Wong's probation in case No. BLF003630, the hearing on which it had ordered to run concurrent to the trial. The court ruled: "Based upon the outcome of the underlying case that we deal with here today, again this is case number INF1402078, the jury having found the defendant guilty as charged in counts 1, 2 and 3. The court at this time does make a finding that the defendant Mr. Wong is, in fact, in violation of his probationary status in case number BLF003630." Defense counsel did not object to the court's consideration of those convictions as evidence of Wong's probation violation.

Wong contends admission of Doe's preliminary hearing testimony and Deputy Lloyd's testimony about Doe's statements violated his general due process right to confront and cross-examine witnesses in the probation revocation hearing. He repeats his argument that this evidence provided the only detailed account of the incident and further

17

asserts that Doe was not credible, which made cross-examination especially important. Wong maintains the court's error prejudiced him because the deputy's testimony was the most damaging evidence in the case, it was partly corroborated by Doe's preliminary hearing testimony, and in the absence of that evidence, "Doe['s] serious credibility issues outweighed the remaining pieces of the prosecution's case, and the court would have been unable to find a probation violation by a preponderance of the evidence."[6]

The People respond that the trial court did not rely on Doe's preliminary hearing transcript or Deputy Lloyd's testimony in finding Wong violated his probation, but on the jury's guilty verdict on the charges in case No. INF1402078. Alternatively, they argue

---

[6]    For these contentions, Wong relies on the balancing test set forth in *United States v. Comito* (9th Cir. 1999) 177 F.3d 1166, under which a court weighs the probationer's interest in his right to confrontation against the government's good cause for denying it. (*Id.* at p. 1170.) In considering the probationer's interest, the court looks to "the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence." (*Id.* at p. 1171.) " '[T]he more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect "verified fact." ' [Citation.] So, too, the more subject to question the accuracy and reliability of the proffered evidence, the greater the releasee's interest in testing it by exercising his right to confrontation." (*Ibid.*) As the People point out, prior to the California Legislature enacting realignment legislation in 2011, the State of California had stipulated in a federal class action lawsuit to an injunction requiring it to adopt policies and procedures limiting the use of hearsay evidence as set forth in *Comito*. (See *In re Miller* (2006) 145 Cal.App.4th 1228, 1237; *People v. Stanphill* (2009) 170 Cal.App.4th 61, 80.) However, following the enactment of realignment, the federal court declared the case moot as of July 1, 2013. (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 651, quoting *Valdivia v. Brown* (E.D. Cal. 2013) 956 F.Supp.2d 1125, 1126-1127.) The federal court injunction only remains in effect for parolees arrested for violations before July 1, 2013. (*Williams*, at p. 651, fn. 9.) Because Wong's crimes occurred after July 2013, we are not subject to the *Comito* balancing test. That test is in any event "nearly identical" to the standard set forth in *People v. Arreola* (1994) 7 Cal.4th 1144, 1160; see *In re Miller*, at p. 1237.)

good cause exists for not allowing confrontation because Doe's testimony at the preliminary hearing was not adverse, and Wong's right to cross-examine her is excused. They further argue that Doe's statements did not violate Wong's right to confront adverse witnesses because they fell within the hearsay exception for spontaneous statements under Evidence Code section 1240, which automatically satisfied Wong's due process rights without the court having to find good cause for Doe's absence.

"We review rulings on whether hearsay was improperly admitted at a [probation] violation hearing for abuse of discretion." (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400.) Doing so, and setting aside Wong's forfeiture of the issue based on his counsel's failure to object on due process grounds (e.g., *People v. Bryant* (2014) 60 Cal.4th 335, 424; *People v. Esayian* (2003) 112 Cal.App.4th 1031, 1042), we conclude for several reasons that Wong cannot show any such error. First, as the People point out, the court found Wong had violated his conditions of probation following the jury's verdict convicting Wong of the offenses at issue in this appeal, and those convictions formed the basis for the court's finding, even though they were not final at the time. (Accord, *People v. Arreola*, *supra*, 7 Cal.4th at p. 1160 [confrontation clause error was harmless where defendant was later convicted of offense forming the basis for his probation violation and "affording defendant a new probation revocation hearing would be a futile act because, on remand, the trial court would have before it defendant's conviction of the offense whose circumstances formed the basis for that court's previous action revoking probation—a conviction that presently, in itself, would support a *proper* revocation of probation"; fact that conviction is not yet final did not preclude the trial

19

court from relying upon it to establish a probation violation]; *People v. Avery* (1986) 179 Cal.App.3d 1198, 1201-1205 ["*a conviction conclusively establishes the fact of a certain course of conduct by the person convicted . . . .* All that need be demonstrated to establish that a violation of probation has occurred is the fact of a new, post-probation conviction, the fact that such conviction or the conduct necessarily involved therein violated a condition of probation, and the further fact that such conviction was suffered by the particular probationer in question"; revocation of probation based on such a conviction is proper even though the conviction is not final pending appeal]; *People v. Towne* (2008) 44 Cal.4th 63, 80-81.) Having concluded Wong was validly convicted of the offenses in a proceeding at which the evidence he challenges was properly admitted, there was no due process violation or error in connection with the court's subsequent probation revocation determination. In his reply brief, Wong essentially concedes this result, when he agrees that the People's contention is based on a "fair representation of the trial transcript" and that in the event we reverse the judgment in the present case, the corresponding judgment in case No. BLF003630 should be reversed.

Second, accepting Wong's argument that the court relied not on the convictions but the challenged evidence to establish a probation violation, it had declared Doe legally unavailable (and counsel stipulated as such) due to her refusal to testify in the face of contempt findings. (See Evid. Code, § 240, subd. (a)(6) [" 'unavailable as a witness' means that the declarant is . . . [¶] . . . [¶] . . . Persistent in refusing to testify concerning the subject matter of the declarant's statement despite having been found in contempt for refusal to testify"].) Though the People do not raise the point, legal unavailability is

20

sufficient good cause under *People v. Arreola*, *supra*, 7 Cal.4th at pages 1159-1160.[7]

Furthermore, the challenged evidence was not the sole evidence establishing Wong's

crimes. As we have pointed out, there was other evidence corroborating Doe's statements

to Deputy Lloyd, namely, the 911 calls, the gardener's testimony, and Doe's bruising on

her chest and arm, photographs of which were admitted into evidence. These facts

reduce the significance of the challenged evidence and provide indicia of reliability.

(*Ibid*.) Under the circumstances, had it not simply relied on Wong's convictions in the

present case, the court would not have abused its discretion in concluding good cause for

---

[7] A probationer facing revocation of probation is not entitled to the "full panoply of rights" due a defendant in a criminal trial. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 441; *People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1198.) However, as the People correctly concede, probationers have a due process right to confront adverse witnesses unless the trial court finds good cause for not allowing confrontation. (*People v. Arreola*, *supra*, 7 Cal.4th at p. 1159; *People v. Stanphill*, *supra*, 170 Cal.App.4th at p. 78; see also *Rodriguez*, at p. 441.) In *Arreola*, the California Supreme Court explained that "[t]he broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Arreola*, at pp. 1159-1160; see also *People v. Winson* (1981) 29 Cal.3d 711, 719 ["Generally, if the witness is legally unavailable, the former testimony may be admitted"].) "Thus, in determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation." (*Arreola*, at p. 1160.)

21

the testimony outweighed the importance of Wong's due process right to confrontation and cross-examination.

### III. *Admission of Prior Instances of Domestic Violence*

Wong contends the trial court erred by permitting Diaz to testify about prior acts of domestic abuse that had occurred 10 years or more from the charged offense. Pointing out that acts over 10 years old are presumptively inadmissible (Evid. Code, § 1109, subd. (e)), he maintains the court did not conduct a proper inquiry into whether admission of Diaz's testimony was in the interest of justice because the People did not prove the date of the acts by a preponderance of the evidence, and the People did not rebut the presumption of inadmissibility because the acts with regard to Diaz were more violent and inflammatory than in the present case. Wong argues that the error requires reversal because evidence of uncharged crimes is inherently prejudicial; the acts against Diaz were more violent and against a younger, more vulnerable, and sympathetic victim; Doe had lied about him being under the influence and refused to testify; and the prosecutor repeatedly referred to Diaz's testimony in her closing and rebuttal arguments.

The People respond that Wong's prior acts against Diaz were within the statutory time limit of 10 years; that defense counsel had made it clear to the court that some of the incidents were nine years old. They also argue the acts against Diaz were not more violent or egregious than the incident against Doe in that there were no pictures of Diaz's injuries (as there were for Doe's), and Doe was pregnant at the time Wong attacked her, making the acts against Doe more inflammatory. They maintain the testimony took up little time of the trial, and that Wong points to no evidence of jury confusion.

22

A. *Legal Principles and Standard of Review*

Propensity evidence—evidence a defendant committed an uncharged offense—is ordinarily inadmissible to establish a disposition to commit a charged offense. (Evid. Code, § 1101, subd. (a); *People v. Culbert* (2013) 218 Cal.App.4th 184, 191-192.) But in a criminal prosecution of a defendant accused of an offense involving domestic violence, "evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1109, subd. (a).) This section makes evidence of past domestic violence inadmissible only if the court determines its probative value is " 'substantially outweighed' " by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 530 & fn. 7.) Evidence Code section 1109 "reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation." (*Id.* at p. 532.)

However, subdivision (e) of Evidence Code section 1109 creates a presumption of inadmissibility if the prior domestic violence is more than 10 years old, "unless the court determines that the admission of this evidence is in the interest of justice." (*People v. Johnson*, *supra*, 185 Cal.App.4th at pp. 538-539.) The interest of justice test is satisfied when the court balances the factors for and against admission under Evidence Code section 352 and concludes the evidence is more probative than prejudicial. (*Id.* at pp. 539-540.) " ' "The principal factor affecting the probative value of an uncharged act is its

23

similarity to the charged offense." ' " (*Id.* at pp. 531-532.) Evidence Code section 1109, subdivision (e) "clearly anticipates that some remote prior incidents will be deemed admissible and vests the courts with substantial discretion in setting an 'interest of justice' standard. We therefore review that determination for abuse of discretion." (*Id.* at p. 539.) "A proper exercise of discretion is ' "neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citation.] Exercises of discretion must be ' "grounded in reasoned judgment and guided by legal principles and legal policies appropriate to the particular matter at issue." ' " (*People v. Diaz* (2014) 227 Cal.App.4th 362, 376-377.)

B. *Analysis*

We conclude the trial court did not abuse its discretion in admitting Diaz's evidence. In their pretrial motion seeking admission of the evidence, the People explained that they sought to have Diaz testify "that the defendant has previously physically assaulted her by slapping her in the face, 'choking her,' and dragging her by the hair from one room to the other." They stated Diaz would also testify about "an incident where the defendant cornered her in a bathroom, banged her head against the tile, assaulting her and causing her vision to blur," as well as "an incident from 2011 . . . where she told him she didn't want to be with him anymore and he pinned her down and told her 'you know me, you know who I am,' " which Diaz "took . . . as a threat." Before the court made its pretrial ruling, the prosecutor had advised it of the presumption of

24

inadmissibility for acts more than 10 years old, and the court, acknowledging it had spent two to three hours reviewing the case, expressly found based on the entirety of the circumstances and after conducting an Evidence Code section 352 balancing that it was in the interest of justice to admit Diaz's testimony, as long as the People laid a proper foundation.

The court has broad discretion when evaluating the prejudicial effect of evidence versus its probative value (*People v. Merriman* (2014) 60 Cal.4th 1, 60), and this court merely asks whether its ruling was arbitrary, capricious, patently absurd, or "exceeds the bounds of reason . . . ." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233; *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.) Here, the court was entitled to conclude that the acts against Diaz were sufficiently similar in nature (restraining both women by pinning them and using physical force with his hands) and not so more inflammatory than the acts against eight-month-pregnant Doe that it caused any Evidence Code section 352 prejudice. On this record, Wong fails to establish the court made an arbitrary or capricious decision to admit evidence of his domestic violence against Diaz. There is no support for Wong's assertion that the trial court did not conduct the proper inquiry into whether admission of Diaz's testimony was in the interest of justice.

Nor did the People fail to prove the date of the acts or meet their burden of proof.[8] In her testimony, Diaz recounted that some of the acts occurred in 2004 (a year after

8    Though Wong argues the People in its limine motion were "required to show the prior acts occurred within 10 years of the charged offense," he provides no support for

25

2003, when they started their relationship) and others occurred in 2011. Though she was unable to clearly recall the date of the incident involving her eyebrow, she testified it had occurred when she was about 15 or 16 years old, roughly 10 to 11 years earlier. The People's burden was to prove Wong *committed the prior acts* by a preponderance of the evidence (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1030) and the jury was so informed by an instruction that satisfied constitutional due process requirements. (See *People v. Reliford* (2003) 29 Cal.4th 1007, 1009, 1012-1016 [holding as to prior CALJIC No. 2.50.01]; *People v. Johnson* (2008) 164 Cal.App.4th 731, 739-740 [rejecting due process challenge to CALCRIM No. 852, the current instruction on Evidence Code section 1109, pointing to *Reliford* and noting CALJIC No. 2.50.01 is similar in all material respects to CALCRIM No. 1191, which tracks the language of CALCRIM No. 852].)

### IV. *Claim of Cumulative Error*

Wong advances a claim of cumulative error, under which "errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) We have found no merit to Wong's claims of error, and absent error in any respect, Wong's cumulative prejudicial error argument must be rejected. (*People v. Butler* (2009) 46 Cal.4th 847, 885.)

### V. *The Trial Court Did Not Err by Sentencing Wong Consecutively on Counts 2 and 3*

---

that proposition. We are not persuaded by his citation to general principles that a moving party has the burden of proof on a motion.

Wong contends the trial court erred by failing to stay under section 654 the sentences on his count 2 conviction for false imprisonment and the count 3 conviction for destruction of a cell phone. He maintains that under *People v. Jones* (2012) 54 Cal.4th 350, the court was required to decide whether a single physical act was being punished, not whether distinct criminal acts were being punished, and here, the prosecution used Wong's acts in pinning Doe to the wall and taking her cell phone as the basis for all three counts. He also points to the circumstances in *People v. Trotter* (1992) 7 Cal.App.4th 363, in which the appellate court held a defendant was properly sentenced consecutively for two of three assaults for "three separate acts" (*id*. at p. 368), namely, firing three shots, the first and second separated by a minute and the second and third separated by several seconds, reasoning the time intervals between the shots evinced a separate intent behind each. (*Id*. at pp. 365-368.) Wong maintains his act of pinning Doe against the wall and his taking her cell phone occurred at the same moment, thus there was only one physical act, but even if that were not the case, because the pinning was used to prove the count 1 corporal injury offense, and the taking of the phone was also used as a basis for count 1, consecutive punishment on counts 2 (based on the pinning against the wall) and 3 (based on the taking of the phone) are barred under section 654.

The People respond that even though Wong's crimes shared common acts or were part of an indivisible course of conduct, the trial court could reasonably conclude he harbored separate objectives for each violation. They argue there was substantial evidence of three separate objectives: Wong intended to inflict injury when he initially pinned Doe against the wall with the intent to get the car keys from her, then harbored a

27

separate objective when he sought to keep Doe in the house against her will when she wanted to leave, then harbored yet another separate intent—to prevent her from calling police—when he destroyed her cell phone. The People compare the circumstances to *People v. Nubla* (1999) 74 Cal.App.4th 719, where section 654 did not preclude multiple punishment for assault with a deadly weapon and spousal abuse given substantial evidence of multiple objectives.

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." The section bars imposition of multiple punishments where one act or an indivisible course of conduct violates more than one statute. (*People v. Correa* (2012) 54 Cal.4th 331, 336-337, 340-341; *People v. Perez* (1979) 23 Cal.3d 545, 551.) Whether a course of conduct is indivisible depends on the intent and the objective of the defendant. (*People v. Capistrano* (2014) 59 Cal.4th 830, 886 [" 'It is [the] defendant's intent and objective, not temporal proximity of his offenses, which determine whether the transaction is indivisible' "]; *Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds in *Correa*, at p. 344.) Generally, if all the offenses were incident to one objective, then punishment may be imposed for any one of such offenses but not for more than one. (*Ibid*.) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely

28

incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were part of an otherwise indivisible course of conduct." (*People v. Perez*, at p. 551.) The purpose of the protection against multiple punishment is to insure that the defendant's punishment is commensurate with his criminal culpability. (*Capistrano*, 59 Cal.4th at p. 886.)

Whether there was more than one objective is a factual determination and will be upheld on appeal if supported by substantial evidence. (See *Capistrano*, *supra*, 59 Cal.4th at p. 886 & fn. 14 [defendant's intent and objectives are factual questions for the trial court, and to permit multiple punishments there must be evidence to support the finding that the defendant formed a separate intent and objective for each offense for which he was sentenced; appellate court may affirm the trial court's ruling, if supported by substantial evidence, on any valid ground]; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

That Wong's counsel only argued for a section 654 stay as to count 2 does not prevent us from considering the question on the merits so as to avoid an unauthorized sentence. (See *People v. Brents* (2012) 53 Cal.4th 599, 618.) In the absence of specific factual findings by the court, we assess the record to determine if it contains facts that would support a lawful decision to impose separate sentences without violating the statutory proscription against multiple punishment. As we explain below, having done so, we uphold the consecutive sentences.

The circumstances here are akin to those in *People v. Nubla*, *supra*, 74 Cal.App.4th 719, permitting the trial court in this case to conclude that Wong engaged in

a course of conduct with separate intents and objectives during Doe's ordeal. In *Nubla*, the defendant, who had long abused methamphetamine and was under the influence on the day of the incident, was convicted of assault with a deadly weapon, corporal injury on a spouse, false imprisonment, and possession of methamphetamine, and received separate sentences on the assault and corporal injury counts, and a stayed sentence on the false imprisonment count. (*Id*. at pp. 723, 730.) He had gotten into an argument with his wife, which escalated to the point where his wife sought to call police, prompting him to pull the telephone from her hand and throw it across the room. (*Id*. at p. 723.) When she began to scream for help, he put his hand over her mouth and pushed her face down onto the bed, causing her nose to bleed. (*Ibid*.) He then pushed something cold and hard against the back of her head, then turned her face-up and put a gun in her mouth, cutting her lip and chipping her tooth. (*Ibid*.) After a few moments he took the gun out of her mouth and told her to shoot him. (*Ibid*.) A few minutes later, he went into the bathroom and apparently took some pills. A short time later, the defendant's wife was able to escape and called police. The appellate court observed that the defendant had "committed several acts of violence against his wife" and while the offenses were "not sexual in nature, [they were] somewhat analogous to sex offenses in that several similar but separate assaults occurred over a period of time." (*Id.* at p. 730.) It held the trial court was entitled to conclude that each act was separate for purposes of section 654: "Appellant's act of pushing his wife onto the bed and placing the gun against her head was not done as a means of pushing the gun into her mouth, did not facilitate that offense and was not incidental to that offense." (*Id.* at p. 731.)

30

As stated, our role is to decide whether substantial evidence supports the trial court's decision to sentence Wong consecutively. The evidence permitted the trial court to find that Wong, angry at Doe because she took his car keys, closed the door and kept her in their home against her will to attempt to get his keys, used both hands to seize her arms and pin her against the wall, causing bruising on her upper arms, then removed one of his hands and grabbed her cell phone, throwing it to the ground to prevent her from calling police, causing further bruising to her chest. Contrary to Wong's assertion that a single physical act occurred here as in *People v. Jones*, *supra*, 54 Cal.4th 350, where the defendant felon engaged in a single act of carrying a loaded and concealed firearm in his car but was convicted of three crimes (*id*. at p. 352), the evidence in this case shows Wong engaged in a course of conduct against Doe, a circumstance taking this case outside of *Jones*'s reasoning. (See *Jones*, at pp. 359-360 [distinguishing cases applying the "intent and objective" test for a course of conduct and stating that defendant's convictions were based on a "single act"; court referred to the circumstances presented there as a "single-act case"].) Indeed, in *Jones*, the court recognized that it might not be easy to ascertain what is a single physical act, and observed that "[i]n some situations, physical acts might be simultaneous yet separate for purposes of section 654." (*Id*. at p. 358 [discussing simultaneous possession of different items of contraband].) While the series of events against Doe may have occurred in close sequence, as in *People v. Nubla*, *supra*, 74 Cal.App.4th 719, they differed and had independent objectives and purposes, without one act facilitating the other. That is, Wong's act in closing the door and blocking Doe from leaving was not necessarily the same act in pinning her to the wall

31

and injuring her, and his destruction of the cell phone did not facilitate the other crimes. Wong's assertion that there was a single act is a view of the evidence at odds with the evidence supporting Wong's sentence, thus we disregard it in our substantial evidence review.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

McDONALD, J.