60 Cal.Rptr.3d 616 (2007)
151 Cal.App.4th 1193
The PEOPLE, Plaintiff and Respondent,
v.
Scott R. SHEPHERD, Defendant and Appellant.
No. A114880.
Court of Appeal of California, First District, Division Three.
June 8, 2007.
As Modified June 26, 2007.
*618 Matthew Zwerling, Jeremy Price, First District Appellate Project, for Defendant and Appellant.
Edmund G. Brown Jr. Attorney General of the State of California, Mary Jo Graves Chief Assistant Attorney General, Gerald A. Engler Senior Assistant Attorney General, Martin S. Kaye Supervising Deputy Attorney General, Christopher W. Grove Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*617 PARRILLI, Acting P.J.
Appellant Scott R. Shepherd appeals from a judgment revoking his probation and sentencing him to a two-year prison term. Appellant seeks reversal of the judgment on the ground that it was based solely on inadmissible hearsay evidence. Appellant further contends, and respondent agrees, the trial court miscalculated the restitution and parole revocation fines and the security fee imposed against him. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
On March 22, 2005, a complaint was filed in Sonoma County charging appellant with: (1) one felony count of drug possession, and (2) one misdemeanor count of drug paraphernalia possession. The complaint further alleged appellant had served a prison term for drug possession.
On March 25, 2005, appellant was placed on probation and the prior prison enhancement was dismissed after he pleaded no contest to both counts. Appellant was charged a $200 restitution fine and a $20 court security fee.
On April 14, 2005, appellant was reinstated on probation after admitting to possessing alcohol in violation of the terms of his probation.
On November 8, 2005, appellant was again reinstated on probation and returned to a residential treatment program after admitting to alcohol possession.
On April 7, 2006, the probation department filed a formal request against appellant for another probation violation involving alcohol consumption. Appellant denied the allegation. A contested hearing was held April 20, 2006, at which Timothy Giddings, appellant's probation officer, and Michael Maritzen, case manager for clients in the SACPA program, testified.[1]
Giddings testified over defense counsel's hearsay objection that it was his habit and custom to receive information from treatment providers regarding his probationers' misconduct, and that it was his obligation to relay that information to the court. On March 30, 2006, Lorena Gomez, a SACPA caseworker, notified Giddings that appellant had been ordered to leave the Henry Ohlhoff House North treatment program (Ohlhoff House) on March 28, 2006. Later *619 that day, Giddings called Renee Roncelli, a program administrator for Ohlhoff House North, who confirmed appellant had smelled of, and tested positive for, alcohol consumption. She further confirmed appellant was asked to leave the program after refusing to go to the "detox center at Helen Vine."
Maritzen testified that it was his habit and custom to have contact with his probationers' treatment providers at least once a month. On occasion, Maritzen had contact with treatment providers at the Ohlhoff House, and had never received false information from them. However, Maritzen had no contact with Roncelli regarding appellant's alleged March 28 probation violation.
On May 1, 2006, the trial court overruled defense counsel's hearsay objection to Giddings's testimony, and found appellant guilty of the probation violation. The trial court thus determined appellant was no longer eligible for probation and, on May 31, 2006, sentenced him to a midterm sentence of two years in state prison. The trial court also imposed a $400 restitution fine, a $400 parole revocation fine, and a $20 court security fee. This appeal followed.

DISCUSSION
Appellant contends the trial court erred in (1) admitting hearsay testimony from Giddings regarding appellant's alleged alcohol consumption during his treatment at Ohlhoff House, and (2) miscalculating certain fines and fees imposed against him. We agree.

I. Error in Admitting Hearsay Testimony.
Before a defendant's probation may be revoked, a preponderance of the evidence must support a probation violation. (People v. O'Connell (2003) 107 Cal. App.4th 1062, 1066, 132 Cal.Rptr.2d 665.) A trial court's decision to admit or exclude evidence in a probation revocation hearing will not be disturbed on appeal absent an abuse of discretion. (Ibid.)
Parole revocation and probation revocation after the imposition of a sentence are constitutionally indistinguishable. (Gagnon v. Scarpelli (1973) 411 U.S. 778, 782 fn. 3, 93 S.Ct. 1756, 36 L.Ed.2d 656.)

A. Hearsay Testimony Regarding Appellant's Alleged Alcohol Consumption.
At issue is the trial court's decision to admit into evidence at appellant's probation revocation hearing hearsay testimony from appellant's probation officer, Giddings. Giddings testified that Roncelli, a program administrator for Ohlhoff House North, informed him appellant had been asked to leave the treatment program after smelling of, and testing positive for, alcohol consumption. Roncelli did not testify at the hearing, and no other evidence supported her alleged out-of-court statements that appellant consumed alcohol in violation of his probation. Moreover, it is not even clear from Giddings's testimony whether Roncelli herself observed appellant's alleged probation violation, or whether she was simply reporting what she had been told by other, unidentified persons at the program.
In reviewing the trial court's decision to admit the hearsay, or perhaps even double hearsay, testimony, we begin with the well-established principle that parole and probation revocation is not part of a criminal prosecution, and thus "the full panoply of rights due a defendant in [a criminal] proceeding does not apply...." (Morrissey v. Brewer (1972) 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484; People v. Winson (1981) 29 Cal.3d 711, 716, 175 *620 Cal.Rptr. 621, 631 P.2d 55.) Nonetheless, "[i]t is fundamental that both the People and the probationer or parolee have a continued post-conviction interest in accurate fact-finding and the informed use of discretion by the trial court. The probationer or parolee's concern is `to insure that his liberty is not unjustifiably taken away and the [People] is to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.' (Gagnon v. Scarpelli, supra, 411 U.S. 778, 785 [93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 663-664]; People v. Coleman (1975) 13 Cal.3d 867, 873-874 [120 Cal. Rptr. 384, 533 P.2d 1024].)" (People v. Winson, supra, 29 Cal.3d at p. 715, 175 Cal.Rptr. 621, 631 P.2d 55.) To safeguard these fundamental interests, due process requires that a defendant at a probation revocation hearing be afforded, at a minimum, certain rights, including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (Id. at p. 716, 175 Cal. Rptr. 621, 631 P.2d 55; People v. Arreola (1994) 7 Cal.4th 1144, 1152-53, 31 Cal. Rptr.2d 631, 875 P.2d 736.) Recognizing this principle, the California Supreme Court has stated "the opportunity of the accused to observe an adverse witness, while that witness testifies, is a significant aspect of the right of confrontation that may not be dispensed with lightly."[2] (People v. Arreola, supra, 7 Cal.4th at p. 1158, 31 Cal.Rptr.2d 631, 875 P.2d 736, citing Coy v. Iowa (1988) 487 U.S. 1012, 1019-1020, 108 S.Ct. 2798, 101 L.Ed.2d 857; People v. Winson, supra, 29 Cal.3d at p. 716, 175 Cal.Rptr. 621, 631 P.2d 55.) Indeed, "the absence of proper confrontation at trial `calls into question' the ultimate `integrity of the fact-finding process. [Citation.]'" (People v. Winson, supra, 29 Cal.3d at p. 717, 175 Cal.Rptr. 621, 631 P.2d 55.)
A probationer's right of confrontation, however, is not absolute, and where "`appropriate,'" witnesses may give evidence by "affidavits, deposition, and documentary evidence...." (People v. Winson, supra, 29 Cal.3d at p. 716, 175 Cal.Rptr. 621, 631 P.2d 55; see also Morrissey v. Brewer, supra, 408 U.S. at p. 489, 92 S.Ct. 2593 ["the [parole revocation] process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"].)
Here, the trial court determined admitting Giddings's testimony would be "consistent with the philosophy and rationale" expressed in the case law governing probation revocation hearings. In particular, the trial court noted the issue was "very close," but admitted the testimony after reasoning "that Mr. Giddings would be able in a violation of probation hearing to testify as to a document that was in the Court's file...."
We thus review California case law governing the use of documentary and testimonial evidence in probation revocation hearings to determine whether the trial court's ruling was proper. Two California Supreme Court decisions, People v. Arreola, supra, 7 Cal.4th 1144, 31 Cal.Rptr.2d 631, 875 P.2d 736 [Arreola], involving testimonial evidence, and People v. Maki (1985) 39 Cal.3d 707, 217 Cal.Rptr. 676, 704 *621 P.2d 743 [Maki], involving documentary evidence, address just that issue.
In Maki the issue was whether certain documentary hearsay evidencea car rental invoice bearing the defendant's signature and imprinted with a Hertz company emblemcould be relied upon as a basis for revoking probation. (Maki supra, 39 Cal.3d 707, 217 Cal.Rptr. 676, 704 P.2d 743.) Our Supreme Court held such evidence was generally admissible in probation revocation hearings if accompanied by reasonable "indicia of reliability." (Id. at p. 715, 217 Cal.Rptr. 676, 704 P.2d 743) In concluding the car rental invoice was in fact reliable, the court explained: "If the invoice were simply printed and filled out by an unidentified hand and devoid of defendant's signature, our conclusion would be that it alone, or even accompanied by the hotel receipt [also signed by the defendant], would be insufficient to find a violation of probation. However, the identification of defendant's signature on the printed invoice and the fact that it is an invoice of the type relied upon by parties for billing and payment of money, lead us to find it sufficient here." (Id. at p. 717, 217 Cal.Rptr. 676, 704 P.2d 743.)
In Arreola, our Supreme Court considered the admissibility of a transcript of live testimony from a preliminary hearing at a probation revocation hearing. (Arreola, supra, 7-Cal.4th 1144, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Following an earlier decision addressing the same issue, People v. Winson, supra, 29 Cal.3d at p. 719, 175 Cal.Rptr. 621, 631 P.2d 55 [Winson], the court rejected use of such evidence in that instance. (Arreola, supra, 7 Cal.4th at p. 1148, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Specifically, the court held that under Winson, a showing of good cause was required "before a defendant's right of confrontation at a probation revocation hearing can be dispensed with by the admission of a preliminary hearing transcript in lieu of live testimony." (Id. at p. 1159, 31 Cal.Rptr.2d 631, 875 P.2d 736; accord People v. Winson, supra, 29 Cal.3d 711, 719, 175 Cal.Rptr. 621, 631 P.2d 55.)
The Arreola court explained whether good cause exists is determined on a case-by-case basis. (Arreola, supra, 7 Cal.4th at p. 1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Broadly, good cause exists "(1) when the declarant is `unavailable' under the traditional hearsay standard (see Evid.Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant. (See generally, Cohen et al., The Law of Probation and Parole (1983 ed.) § 9.32, at pp. 466-467.)" (Arreola, supra, 7 Cal.4th at p. 1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.) Moreover, the good cause showing must be considered together with other relevant circumstances, including the purpose for which the evidence is offered, the significance of the evidence to the factual determination upon which the alleged probation violation is based, and whether other admissible evidence, including the probationer's admissions, corroborates the evidence.[3] (Ibid.)
*622 The Arreola court rejected the Attorney General's suggestion that Maki modified or overruled the good cause standard set forth in Winson for admitting testimonial evidence in favor of the more lenient "indicia of reliability" standard. (Arreola, supra, 7 Cal.4th at pp. 1155-1157, 31 Cal. Rptr.2d 631, 875 P.2d 736.) The court explained:
"There is an evident distinction between a transcript of former live testimony and the type of traditional `documentary' evidence involved in Maki that does not have, as its source, live testimony. (See 2 Witkin, Cal. Evidence (3d ed.1986) § 901 et seq.) As we observed in Winson, the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor. ([Winson, supra,] 29 Cal.3d at p. 717[, 175 Cal.Rptr. 621, 631 P.2d 55].) Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material, and where the author, signatory, or custodian of the document ordinarily would be unable to recall from actual memory information relating to the specific contents of the writing and would rely instead upon the record of his or her own action." (Arreola, supra, 7 Cal.4th at pp. 1157, 31 Cal.Rptr.2d 631, 875 P.2d 736, fn. omitted.)
As such, the court continued, "`[i]f the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on [a] weaker version [of the same evidence].... ([United States v. Inadi (1986) ] 475 U.S. [387,] 394-395[, 106 S.Ct. 1121, 89 L.Ed.2d 390].)'"[4] (Arreola, supra, 7 Cal.4th at pp. 1158-1159, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
We now apply the lessons of Maki Winson and Arreola to this case. True, we are concerned with a witness's live testimony regarding a declarant's out-of-court statements rather than, as in Winson and Arreola, a declarant's prior testimony. Both, however, are forms of testimonial hearsay evidence. (Crawford v. Washington (2004) 541 U.S. 36, 51-52, 124 S.Ct. 1354, 158 L.Ed.2d 177.) As such, we conclude the good cause standard set forth in Winson and reaffirmed in Arreola is applicable, rather than the more lenient indicia of reliability standard set forth in Maki. We thus consider whether that good cause standard has been met.
The trial court permitted Giddings to testify regarding alleged out-of-court statements made by Roncelli that appellant violated his probation by consuming alcohol. Because Giddings testified in lieu *623 of Roncelli, appellant had no opportunity to cross-examine Roncelli, and the court had no opportunity to observe her demeanor. Moreover, no justification was offered for Roncelli's absence. The prosecution nowhere suggested she was unavailable, or that her live testimony could be obtained only at great inconvenience. And no other evidence corroborated her alleged statements that appellant smelled of, and tested positive for, alcohol consumption. Indeed, as mentioned above, it is not even clear from Giddings's testimony whether Roncelli herself observed appellant's alleged probation violation, or whether she was simply reporting what she had been told by other, unidentified persons at the program. Appellant, for his part, denied her claims.
This evidence presented below is remarkably similar to that in Winson and Arreola. As in those cases, Roncelli, or perhaps even an unidentified third person, was "the sole percipient witness to the alleged probation violation, and there [was] ... no showing that [she] was unavailable or that other good cause existed for not securing [her] live testimony...." (Arreola, supra, 7 Cal.4th at p. 1160, 31 Cal. Rptr.2d 631, 875 P.2d 736; see also People v. Winson, supra, 29 Cal.3d at p. 719, 175 Cal.Rptr. 621, 631 P.2d 55.) As such, we have no difficulty concluding that, as in Arreola and Winson, no showing of good cause has been made for relying on Giddings's hearsay or double hearsay testimony in lieu of live testimony. The trial court thus erred in admitting the testimony at the hearing.

B. Hearsay Testimony Regarding Appellant's Failed Alcohol Test.
In so ruling, we clarify the good cause standard applies equally to Giddings's testimony regarding Roncelli's statement that appellant failed an alcohol test. Urging that testimony regarding test results is particularly reliable, respondent relies on People v. Brown (1989) 215 Cal.App.3d 452, 455-456, 263 Cal.Rptr. 391 [Brown ]. There, a police officer was permitted to testify at a probation revocation hearing that the appellant had tested positive for cocaine use, although the officer did not participate in the test. The court found the hearsay testimony sufficiently reliable to be admitted because the officer testified he routinely passed confiscated substances to the police chemist for testing; it was the "regular business" of the police laboratory to conduct such tests; evidence presented at appellant's hearing was corroborated by other admissible evidence, including drug paraphernalia seized at his arrest; and the appellant presented no contradictory evidence. (Id. at pp. 455-456, 263 Cal.Rptr. 391.)
To the extent respondent suggests a separate standard governs the use in probation revocation hearings of hearsay testimony regarding test results, we disagree. The Court of Appeal, First District, Division Two's decision in Brown predates our Supreme Court's decision in Arreola, which, as discussed above, confirmed testimonial evidence is subject to a stricter standard than documentary evidence when relied upon in probation revocation hearings (i.e., the good cause standard). (Arreola, supra, 7 Cal.4th at pp. 1159-1160, 31 Cal.Rptr.2d 631, 875 P.2d 736; cf. People v. Johnson, supra, 121 Cal.App.4th at pp. 1412-1413, 18 Cal.Rptr.3d 230 [concluding a laboratory report was "routine documentary evidence" rather than "a substitute for live testimony at [the defendant's] revocation hearing" (id. at p. 1413, 18 Cal. Rptr.3d 230); "[i]f the preparer had appeared to testify at [the] hearing, he or she would merely have authenticated the document" (id. at p. 1412, 18 Cal.Rptr.3d 230)].) As such, Giddings's testimony regarding appellant's alleged failure to pass *624 the alcohol test, like his other testimony based on Roncelli's out-of-court statements, is subject to the good cause standard, which the prosecution failed to meet.[5]
Accordingly, for all the reasons discussed above, we conclude the objection to the use of the hearsay evidence should have been sustained; its admission compels reversal.

II. Error in Calculating Restitution Fines and Security Fees.[**]

DISPOSITION
Because hearsay testimony was improperly admitted, the order revoking appellant's probation is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
POLLAK and SIGGINS, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.
[1] "SACPA" refers to the Substance Abuse and Crime Prevention Act.
[2] "Probation revocation proceedings are not `criminal prosecutions' to which the Sixth Amendment applies. (Citations.) Probationers' limited right to confront witnesses at revocation hearings stems from the due process clause of the Fourteenth Amendment, not from the Sixth Amendment." (People v. Johnson (2004) 121 Cal.App.4th 1409, 1411, 18 Cal.Rptr.3d 230.)
[3] Recent case law reflects that "in a stipulated order for permanent injunctive relief in Valdivia v. Davis (E.D.Cal.2002) 206 F.Supp.2d 1068, the State of California agreed to develop parole policies and procedures which, inter alia, limit the use of hearsay evidence as set forth in U.S. v. Comito [(9th Cir.1999)] 177 F.3d 1166." (In re Miller (2006) 145 Cal.App.4th 1228, 1237, 52 Cal.Rptr.3d 256.) In U.S. v. Comito, supra, 177 F.3d 1166 [Comiro], the court set forth a balancing test for hearsay evidence that weighs a parolee's right to confrontation against the government's showing of good cause for dispensing with such right. The parties here rely on Arreola and have not invoked the State's stipulated order to follow Comito. Consistent with the parties' briefing, we follow Arreola, whose standard, we conclude, is nearly identical to that set forth in Comito. (See In re Miller, supra, at p. 1237, 52 Cal.Rptr.3d 256.)
[4] This is not to say the indicia of reliability standard set forth in Maki and the good cause standard set forth in Winson are wholly distinct. Rather, the good cause standard recognizes that a third party's unsworn verbal statements are the least reliable type of hearsay, and thus requires a greater showing to support use of such evidence in probation revocation hearings. (See In re Miller, supra, 145 Cal.App.4th at pp. 1238-1239, 52 Cal. Rptr.3d 256.)
[5] Even were some lesser standard to apply, we find Brown distinguishable. Unlike there, our record reveals no evidence corroborating the test results or indicating the test was performed during the regular course of a reliable laboratory's business. In fact, no evidence whatsoever was offered regarding the type of test or who performed it. And as already mentioned, appellant disputed the results.
[**] See footnote *, ante.