Filed 10/27/25  P. v. Parkin CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COLE BRUCE PARKIN,<br><br>    Defendant and Appellant. | A171064<br><br>(Mendocino County<br>Super. Ct. No. 24CR04637)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

BY THE COURT[*]:

The court orders that the opinion filed in this appeal on October 14, 2025, be modified as follows:

1. On page 15, in the Disposition, change "probation" to "PRCS" so the sentence reads:

> Because the trial court improperly admitted hearsay testimony, the order revoking Parkin's PRCS is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

[*] Brown, P. J., Streeter, J., Clay, J. (Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.)

1

The modification effects no change in the judgment.

Dated: October 27, 2025                                    BROWN, P. J.

Filed 10/14/25  P. v. Parkin CA1/4 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>COLE BRUCE PARKIN.<br><br>　　　Defendant and Appellant. | A171064<br><br>(Mendocino County<br>Super. Ct. No. 24CR04637) |

Cole Bruce Parkin appeals from a judgment finding him in violation of conditions of his Post-Release Community Supervision.  He challenges the judgment on the ground it was based on inadmissible hearsay evidence, and further asserts one of his supervision conditions is unconstitutionally vague and improperly delegates authority to the probation department.  We agree the judgment was based on inadmissible hearsay and reverse.

## I.　　FACTUAL AND PROCEDURAL BACKGROUND

In December 2021, Parkin was charged with one count of recklessly causing the fire of a structure or forest (Pen. Code, § 452, subd. (c)).[1]  One month later, Parkin was sentenced to probation.

---

[1] All undesignated statutory references are to the Penal Code.

1

After sustaining several probation violations, Parkin's probation was revoked on November 14, 2023, and he was sentenced to 16 months in prison. That same day, he was released from custody on Post-Release Community Supervision (PRCS).[2] The conditions of Parkin's release included standard terms set by the California Department of Corrections and Rehabilitation and "Special Conditions" set by the Mendocino County probation department. The special conditions included Special Condition D which stated in relevant part: "You shall cooperate fully with any form of rehabilitation or counseling program as directed by your Probation Officer, and remain working constructively within that program for the length of time felt to be necessary by your Probation Officer." Parkin was also required to keep his probation officer informed of his residence and mailing address at all times.

In June 2024, the probation department filed a petition to revoke Parkin's PRCS based on his failure to attend the Geo Reentry Program he was referred to, and his failure to attend a probation office appointment. The probation department also indicated that Parkin's whereabouts were unknown. Parkin was subsequently arrested based on his PRCS violations.

At the PRCS hearing held the following month, Parkin did not testify but Probation Officer Rodriguez-Cruz testified that Parkin was unsuccessfully discharged from the Geo Reentry Program.[3] Officer Rodriguez-Cruz based his testimony on a letter he said he received from the program in June 2024 which stated that Parkin had been discharged for

---

[2] "PRCS was created by the Legislature in 2011 as an alternative to parole for non-serious, nonviolent felonies. It is similar, but not identical to parole." (*People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399.)

[3] Officer Rodriguez-Cruz stated the Geo Reentry Program offers online services to help individuals on PRCS with structure.

missing more than 10 days in the program. Defense counsel observed no documentary evidence was presented and objected on hearsay grounds. The trial court overruled the objection, stating that "reliable hearsay is admissible."

Officer Rodriguez-Cruz additionally testified that he ordered Parkin to report to the probation office on May 21, 2024, but Parkin failed to show up. Officer Rodriguez-Cruz also attempted to call Parkin multiple times, but Parkin did not answer.

In closing, the People argued Parkin failed to complete the Geo Reentry Program, failed to report to his probation officer, did not attend meetings directed by his probation officer, and failed to notify his probation officer of his address. Defense counsel did not dispute these facts. Instead, she argued that Special Condition D, which required Parkin to comply with " 'any' " form of rehabilitation or counseling required by the probation department was unconstitutionally vague under *In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 as it did not apprise Parkin of what was expected of him. Defense counsel asked that that condition be dismissed as void for vagueness.

The trial court held that Parkin violated his PRCS conditions, and Special Condition D wasn't vague. The court also stated that "[i]ndependently, on each of those bases, an explanation [for a PRCS violation] would have served as a mitigation factor in the court's sentencing." In the absence of any such explanation, the court reinstated Parkin to PRCS with 60 days in custody, 18 days custody credits, and 50 hours of community service.

At the probation officer's recommendation, the court also referred Parkin to "Geo Reentry Services for a rehab, a residential rehabilitation facility, as directed by probation." The court later reiterated that the minutes

would reflect that Parkin would be "referred to Geo Reentry Services for [sic] residential treatment program as directed by probation." The court declined to modify any of the PRCS terms.

This appeal followed.

## II.    DISCUSSION

Parkin argues the trial court erred in considering Officer Rodriguez-Cruz's hearsay testimony regarding the Geo Reentry Program letter he received stating that Parkin had been terminated from the program after missing more than 10 days.[4] Parkin also asserts Special Condition D's requirement that he cooperate with "any" form of rehabilitation or counseling as directed by probation was unconstitutionally vague and an improper delegation of authority to the probation department.

We need not address Parkin's arguments regarding Special Condition D because we conclude the trial court erred in admitting Officer Rodriguez-Cruz's testimony regarding Parkin's termination from the Geo Reentry Program.

### A.    Applicable Legal Principles and Standard of Review

Before a defendant's probation or parole may be revoked, the prosecution must prove a violation by a preponderance of the evidence. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066 (*O'Connell*).) "A trial court's decision to admit or exclude evidence in a [] revocation hearing will not be disturbed on appeal absent an abuse of discretion." (*People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1197-1198 (*Shepherd*).) "We [therefore] review rulings on whether hearsay was improperly admitted at a

---

[4] Parkin does not contest the trial court's finding that he failed to report to probation.

4

violation hearing for abuse of discretion." (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400 (*Abrams*).)

Probation and parole revocations are not part of a criminal prosecution; as such, " 'the full panoply of rights due a defendant in [a criminal] proceeding does not apply.' " (*People v. Gray* (2023) 15 Cal.5th 152, 163.) For instance, "the Sixth Amendment's right of confrontation does not apply to probation violation hearings"; rather, "[a] defendant's right to cross-examine and confront witnesses at a violation hearing stems . . . from the due process clause of the Fourteenth Amendment." (*Abrams*, *supra*, 158 Cal.App.4th at p. 400.) This right to confrontation, however, is not absolute and the parole revocation process should be " 'flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.' " (*People v. Winson* (1981) 29 Cal.3d 711, 716, 719 (*Winson*).)

In considering the admissibility of hearsay evidence at a parole or probation revocation hearing, a "case-by-case consideration is necessary" because "[u]nder a due process analysis, the importance of a defendant's confrontation right will vary with the circumstances." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 66–67.) In the context of the more flexible process of parole or probation revocation hearings, "there will be cases where the confrontation right must give way to the state's countervailing interests in presenting hearsay." (*Id.* at pp. 66–67.)

Based on these principles, the California Supreme Court has discussed the admissibility of hearsay at probation or parole violation hearings and has established two separate standards for admitting hearsay evidence depending on whether the hearsay is "testimonial" or "documentary" in nature. (*Shepherd*, *supra*, 151 Cal.App.4th at p. 1199.)

5

***Testimonial Evidence***

With respect to testimonial evidence, in *Winson*, the high court held that a preliminary hearing transcript of a witness' testimony is not admissible at a parole or probation revocation hearing absent a showing of good cause. (*Winson, supra,* 29 Cal.3d at pp. 713–714.) The court later reaffirmed this holding in *People v. Arreola* (1994) 7 Cal.4th 1144 (*Arreola*), and further stated the broad standard of good cause is met "(1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Id.* at pp. 1159–1160.) In both *Winson* and *Arreola*, the high court noted the good cause requirement is compelled by the value of cross-examination and the opportunity for observation of an adverse witness' demeanor. (*Winson*, at p. 717; *Arreola*, at p. 1155.)

Since these cases were decided, what has been somewhat less clear is what constitutes "testimonial" evidence. In a more recent case, *People v. Dungo* (2012) 55 Cal.4th 608, 619 (*Dungo*), the California Supreme Court noted that "the high court has not agreed on a definition of 'testimonial.' "[5]

---

[5] *Dungo* related to a criminal defendant's Sixth Amendment right to confront adverse witnesses and not to a defendant's Fourteenth Amendment right to due process which gives rise to a similar right of cross-examination and confrontation. (See *Dungo, supra,* 55 Cal.4th at p. 612.) Regardless, this distinction does not render inapplicable the principles the high court set out regarding the general characteristics of testimonial evidence. (See, e.g., *People v. Johnson* (2004) 121 Cal.App.4th 1409 (*Johnson*) [Sixth Amendment cases may provide helpful examples in determining the scope of the right of confrontation held by probationers under the due process clause].)

With that said, the court observed that testimonial hearsay has two critical components: "First, to be testimonial the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (*Id.* at p. 619; see also *People v. Lopez* (2012) 55 Cal.4th 569, 582 (*Lopez*) [same].) Statements which merely record objective facts or observations of fact are generally not testimonial in nature. (*Dungo,* at p. 620.) Nor are official records which serve purposes other than to aid a criminal investigation. (*Id.* at p. 621.)

### *Documentary Evidence*

In contrast to the good cause standard for testimonial hearsay, the California Supreme Court held in *People v. Maki* (1985) 39 Cal.3d 707, 709 (*Maki*) that documentary hearsay evidence may be admitted at a probation or parole revocation proceeding if there are "sufficient indicia of reliability regarding the proffered material." In coming to this conclusion, the court noted that the right of confrontation is not absolute, that revocation proceedings should be flexible enough to allow for conventional substitutes for live testimony (including affidavits, depositions, and documentary evidence), and that various federal courts had demonstrated a willingness to consider inadmissible hearsay evidence when it is accompanied by a reasonable indica of reliability. (*Id.* at pp. 710, 714–715.)

The *Maki* court then considered the admissibility of a car rental invoice and hotel receipt which indicated that defendant had left his county and state without the permission of his probation officer. (*Maki, supra*, 39 Cal.3d at pp. 1156–1157.) The high court found the question to be "close" but ultimately concluded that though the hotel receipt alone (a printed form with defendant's last name on it) had "minimal probative value," the identification

7

of defendant's signature on the car rental invoice and the fact the invoice was the type relied on by parties for billing and payment of money rendered the documents a sufficient basis upon which to find defendant violated the terms of his parole. (*Id.* at pp. 716–717.)

In discussing the difference between testimonial hearsay evidence and documentary hearsay evidence, the high court has noted that there is an "evident distinction between a transcript of former live testimony and the type of traditional 'documentary' evidence involved in *Maki* that does not have, as its source, live testimony." (*Arreola, supra*, 7 Cal.4th at p. 1157.) More particularly, the court observed that whereas "the need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor," the witness's demeanor is "not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts." (*Ibid.*) This is because, often, the purpose of such foundational testimony is simply to authenticate the document, and the author, signator or custodian of the document may not even be able to recall from memory the specific contents of the writing. (*Ibid.*)

## B. Analysis

Parkin argues the trial court abused its discretion when it allowed Officer Rodriguez-Cruz to testify about the letter he received from Geo Reentry regarding Parkin's discharge from the program after missing more than 10 days, without producing the letter or offering any good cause for the absence of the declarant. In response, the People assert Officer Rodriguez-Cruz's testimony was not testimonial hearsay which requires a showing of good cause, but documentary hearsay which can be admitted when there are sufficient indicia of reliability. In any event, the People argue any error in

8

admitting the hearsay evidence was harmless because the trial court found Parkin had violated three other terms of his PRCS.

We address each of these contentions in turn.

### *Hearsay Testimony Regarding Parkin's Termination from Geo Reentry Program*

The parties dispute whether Officer Rodriguez-Cruz's testimony about the Geo Reentry discharge letter was *testimonial* evidence which required application of the good cause standard, or *documentary* evidence which could be admitted if there were sufficient indicia of reliability. We observe the subject testimony does not neatly fit into either category.

At the outset, we are not persuaded Officer Rodriguez-Cruz's testimony regarding the Geo Reentry discharge letter was testimonial evidence requiring a showing of good cause. Once again, the California Supreme Court has held that evidence is testimonial if it was made with some degree of formality or solemnity, and if its primary purpose relates in some way to a criminal prosecution. (*Dungo*, *supra*, 55 Cal.4th at p. 619.) Examples of statements made with some degree of formality or solemnity include reports that have been sworn before a notary or signed with the knowledge that the statements may be used in a court proceeding. (See, e.g., *Lopez*, *supra*, 55 Cal.4th at pp. 584–585.)

Here, there was no indication the Geo Reentry discharge letter was characterized by a similar degree of formality or solemnity. Further, the letter did not pertain to a criminal investigation; instead, it merely reported the objective fact that Parkin had missed more than 10 days of his program. (See *Dungo*, *supra*, 55 Cal.4th at p. 619 [statements that record objective facts generally not testimonial].) As such, the letter was not testimonial and

9

the good cause standard for admitting testimonial hearsay did not apply. (See *Winson*, *supra*, 29 Cal.3d at pp. 713–714.)

Parkin argues for a contrary conclusion, relying on *Shepherd*, *supra*, 151 Cal.App.4th at p. 1202 in support. His reliance on that case is misplaced.

In *Shepherd*, defendant's probation officer testified over defense counsel's objection that he had been informed by defendant's caseworker and treatment program administrator that defendant had smelled of, and tested positive for, alcohol consumption, and had been ordered to leave the treatment program. (*Shepherd*, *supra*, 151 Cal.App.4th at p. 1197.) Division 3 of our court held that both the testimony regarding defendant's alcohol consumption and the testimony regarding defendant's failed alcohol test was testimonial hearsay and, as such, the good cause standard set forth in *Winson* and *Arreola* applied. (*Shepherd*, *supra*, 151 Cal.App.4th at pp. 1201–1203.) In the absence of a good cause showing, we concluded the trial court erred in admitting the probation officer's testimony as defendant had no opportunity to cross-examine the program administrator or observe her demeanor. (*Id.* at p. 1202.)

Though we maintain *Shepherd* was well-reasoned, critically, we observe the case was decided five years before the California Supreme Court enumerated its principles for determining if hearsay is testimonial in *Dungo* and *Lopez*. As such, the standard applied by the *Shepherd* court in determining if the subject hearsay was testimonial did not reflect the criteria that was later enumerated by the high court regarding formality of the testimonial statements and their relation to a criminal prosecution. (See *Dungo*, *supra*, 55 Cal.4th at p. 619.) We therefore cannot rely on *Shepherd*'s rationale and similarly conclude that Officer Rodriguez-Cruz's testimony about the Geo Reentry discharge letter was testimonial.

10

Notwithstanding the foregoing, we are also not persuaded by the People's argument the Geo Reentry discharge letter was properly admitted by the trial court as *documentary* evidence under *Maki*, because it was reliable. The People refer to a number of cases that upheld the admission of documentary hearsay when there were sufficient indicia of reliability. Most of these cases, however, are distinguishable because they dealt with the admission of an actual document that was before the trial court during the revocation hearing. (See, e.g., *Maki, supra,* 39 Cal.3d at p. 709 [addressing whether car rental invoice and hotel receipt, both of which were present and examined at the probation revocation hearing, were admissible documentary hearsay]; *O'Connell, supra,* 107 Cal.App.4th at p. 1066 [discussing admissibility of drug treatment program report which stated defendant had been terminated from the program due to " 'Too Many Absences' "]; *People v. Gomez* (2010) 181 Cal.App.4th 1028, 1038–1039 [evaluating admissibility of probation report reviewed by the trial court which indicated defendant had failed to report to probation officer, pay restitution or submit verification of employment or attendance at counseling sessions]; *Johnson, supra,* 121 Cal.App.4th 1409, 1412 [addressing trial court's admission of a laboratory report that analyzed a rock of cocaine defendant was selling].)

Here, in contrast, the trial court was not faced with the admissibility of an actual document (i.e. the Geo Reentry discharge letter). Instead, the court was faced with a probation officer's statements about the contents of a letter he had read. As such, the aforementioned cases are inapposite.

The People additionally rely on *Abrams, supra,* 158 Cal.App.4th at p. 401 for the proposition that Officer Rodriguez-Cruz's testimony about the Geo Reentry discharge letter was admissible. It is true the facts in *Abrams* are more similar to ours as the issue before the *Abrams* court was not the

11

admission of an actual document, but the admission of testimony based on the hearsay contents of that document. (See *Abrams*, *supra*, 158 Cal.App.4th at p. 401.) Notwithstanding this fact, the People's reliance on *Abrams* is also misplaced.

In *Abrams*, one probation officer testified as to what another probation officer had written in his probation report, and to the fact the probation department records indicated defendant had failed to contact the probation office. (*Abrams*, *supra*, 158 Cal.App.4th at p. 401.) The Second District held this testimony was admissible because the evidence from the probation reports, which had been prepared contemporaneously to and specifically for the purpose of the revocation hearing, had sufficient indicia of reliability. (*Id.* at p. 404.) However, a key factor sets *Abrams* apart from our case. Specifically, in *Abrams*, the testifying probation officer had his colleague's probation report with him on the witness stand and referred to it while testifying. (*Id.* at p. 404.) This circumstance therefore lent itself much more clearly to a finding of reliability.

Here, in contrast, there is no indication the trial court was ever presented with the Geo Reentry discharge letter. Nor did Officer Rodriguez-Cruz appear to have the letter with him. Nor does the letter even appear in the record. In the absence of any documentary evidence, we conclude it was error for the trial court to find the evidence sufficiently reliable.

Further, even if the *Maki* standard applied, it is clear there were not sufficient indicia of reliability regarding the Geo Reentry discharge letter. We observe that even in *Maki*, where the high court had before it a formal car rental invoice and hotel receipt with defendant's name on it that had been seized from defendant's home, the court stated the case was a "close one." (*Maki*, *supra*, 39 Cal.3d at p. 716.) Ultimately, the *Maki* court concluded the

12

documents were properly considered by the trial court because defendant's signature was identified on the car rental invoice and the invoice was of the type typically relied on by parties for the billing and payment of money. (*Id.* at p. 717.)  However, the high court also stated that if the car rental invoice had been merely printed and filled out without defendant's signature, the invoice alone or even accompanied by a hotel receipt, would be insufficient to find a violation of probation. (*Ibid.*)  Thus, it is clear that the standard for finding sufficient indicia of reliability requires some level of exactitude and is not effortlessly met.

If the *Maki* court found that the car rental invoice and hotel receipt barely passed muster in terms of forming a sufficient basis for finding a probation violation, we cannot conclude there were sufficient indicia of reliability for the Geo Reentry discharge letter which was not even presented to or available for examination by the trial court.  As such, the trial court erred in admitting Officer Rodriguez-Cruz's testimony regarding the contents of the letter.

### *Whether Trial Court's Error was Harmless*

The People argue that even if the trial court erred in admitting Officer Rodriguez-Cruz's testimony, any error was harmless because: (1) Parkin did not dispute that he had missed his Geo Reentry Program appointments and failed to meet with his probation officer, and (2) the court found Parkin in violation of his PRCS on three other independent bases i.e. failing to report to his probation officer, failing to attend meetings directed by his probation officer in May 2024, and failing to notify his probation officer of his address and whereabouts.  We are not persuaded.

In determining whether the erroneous admission of hearsay evidence prejudiced a defendant, we apply the " 'harmless-beyond-a-reasonable-

13

doubt' " standard as the error is of federal constitutional dimension. (*Arreola*, *supra*, 7 Cal.4th at p. 1161.)

We cannot say the trial court's error was harmless beyond a reasonable doubt. With respect to Parkin's failure to dispute his PRCS violations, the People rely on *Abrams*, *supra*, 158 Cal.App.4th at p. 405 and *O'Connell*, *supra*, 107 Cal.App.4th at p. 1067, where the courts of appeal found harmless error because defendants admitted to the subject probation violations. These cases are distinguishable because, here, Parkin did not testify at the PRCS revocation hearing or admit to any PRCS violations.

Further, we are not persuaded the trial court's finding of three PRCS violations apart from Parkin's failure to complete the Geo Reentry Program renders the improper admission of Officer Rodriguez-Cruz's testimony harmless beyond a reasonable doubt. (See *Arreola, supra*, 7 Cal.4th at p. 1161.) In this regard, we observe the court stated at the PRCS revocation hearing that if Parkin had provided an explanation as to any one of the alleged PRCS violations, "[such] explanation would have served as a mitigation factor in the court's sentencing." As such, the court itself indicated that the sentence imposed took into account each and every one of the PRCS violations, and a satisfactory explanation provided as to even one of the violations could have affected the court's sentencing decision. It is therefore not unreasonable to conclude that the trial court would have imposed a lesser sanction on Parkin had it not found that in addition to the other three violations, he also failed to complete the Geo Reentry Program (arguably the most serious violation).

For the reasons discussed above, we conclude Parkin's objection to the admission of Officer Rodriguez-Cruz's testimony about the Geo Reentry discharge letter should have been sustained. For this reason, we will not

14

address in detail Parkin's other contentions that Special Condition D., which required him to "cooperate fully with any form of rehabilitation or counseling program as directed by [his] Probation Officer . . . for the length of time felt to be necessary [by his] Probation Officer," was unconstitutionally vague and impermissibly delegated the authority to place Parkin in a residential treatment program to the probation department.[6]

## DISPOSITION

Because the trial court improperly admitted hearsay testimony, the order revoking Parkin's probation is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

[6] In any event, we are not persuaded Special Condition D was unconstitutionally vague when considered in light of the trial court's comments upon reinstating PRCS that Parkin would be "referred to Geo Reentry Services for [sic] residential treatment program, as directed by probation." (See *People v. Smith* (2022) 79 Cal.App.5th 897, 902 [in determining whether a condition is unconstitutionally vague, any oral or written comments clarifying the probation condition made by the trial court may be considered].) This statement was very specific and provided Parkin with notice of what would be required of him. Similarly, given the court specifically stated Parkin would be referred to a "*residential* treatment program," it does not appear the court delegated to the probation department the authority to decide if Parkin would participate in a residential program. (Italics added.) Instead, the court itself mandated residential treatment.

15

_____

Clay, J.

WE CONCUR:


_____

Brown, P. J.


_____

Streeter, J.